UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Joseph W. Chalifoux**

    **v.**                                                    Civil No. 14-cv-136-SM

**Jennifer M. Chalifoux et al.**[1]


## REPORT AND RECOMMENDATION

Pro se plaintiff Joseph Chalifoux, proceeding in forma pauperis, has filed a Third Amended Complaint (doc. no. 7) ("Complaint").  The Complaint is before the Court for preliminary review, pursuant to 28 U.S.C. § 1915(e)(2) and LR 4.3(d)(2).


## PRELIMINARY REVIEW STANDARD

This Court reviews pleadings filed by plaintiffs proceeding in forma pauperis, and may dismiss claims asserted therein if they seek monetary relief against a defendant who is immune from

---

[1]Defendants are plaintiff's estranged wife, Jennifer M. Chalifoux; her father, James R. Cieslik; the Town of Tyngsborough, Massachusetts; Tyngsborough Police Department ("TPD") Officers Shawn Woods, Shaun Wagner, Mark Borque, and Cynthia Shay; TPD Chief Richard Howe; plaintiff's ex-wife Charlene Shute; Middlesex County Family and Probate Court Guardian Ad Litem Richard Wolman; Attorney Gail E. Bakis; Attorneys John A. James, Jamie Mauritz-James, Nick Halks, and Timothy Mauritz; Shawn Scott Mustapha; and some number of unnamed individuals who posted allegedly defamatory remarks on the website "Topix," and other websites, whom plaintiff identifies as "John and Jane Doe" or the "Does."

such relief, are frivolous, or fail to state a claim upon which relief may be granted.  28 U.S.C. § 1915(e)(2).  In determining whether a pro se pleading states a claim, the Court construes the pleading liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Disregarding any legal conclusions, the Court considers whether the factual content in the pleading and inferences reasonably drawn therefrom, taken as true, state a plausible claim to relief.  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

<u>BACKGROUND</u>

Plaintiff Joseph Chalifoux, a New Hampshire resident, and his estranged second wife Jennifer Chalifoux, the mother of their two children, have been involved in contentious divorce and child custody proceedings for several years in Middlesex County Family and Probate Court in Massachusetts ("Family Court").  On July 1, 2013, Ms. Chalifoux filed an ex parte petition in the Lowell District Court seeking a temporary domestic abuse prevention order against plaintiff, under Mass. Gen. L. ("MGL") ch. 209A.  Based on Ms. Chalifoux's assertions that her estranged husband had recently purchased a number of weapons and was volatile, the Lowell District Court issued a

temporary abuse prevention order ("209A Order") and scheduled an evidentiary hearing for July 15, 2013.  The temporary 209A Order, which was subsequently extended for a year after the July 15 hearing, restricted plaintiff's contacts with Ms. Chalifoux and their children and required plaintiff to surrender his weapons and firearms permit to the police.  Later on the day of the temporary order's issuance, officers from the Tyngsborough, Massachusetts, Police Department ("TPD") stopped plaintiff as he arrived in Ms. Chalifoux's driveway to pick up his children, and told him to go with them in his own car to the Dracut Police Department ("DPD"), where they served him with the 209A Order.

En route to the DPD, plaintiff stopped his car in a driveway, to ask the officers why he had to go to the DPD. Plaintiff asserts that, in connection with that conversation, the officers pat-frisked him and told him that they planned to question him and search his residence in Tyngsborough. Plaintiff denied residing in Tyngsborough, and maintained that the officers needed his girlfriend Krystal Ayotte's consent before they searched her Tyngsborough home.  The officers allowed plaintiff to call Ayotte on his cellphone to seek her permission for the search.  The officers told Ayotte that they expected to be able to get a warrant if she did not consent.

Ayotte eventually agreed to the search on the condition that her mother and plaintiff would be present and that her mother could revoke consent at any time.  After the call with Ayotte ended, the officers "ordered" plaintiff back into his car, and continued their drive to the DPD.

Upon their arrival at the DPD, three officers (a federal agent, a DPD officer, and TPD Officer Borque) entered a room with plaintiff.  Plaintiff asserts that Borque appeared to be in charge of questioning, and that Borque questioned plaintiff about whether he had guns in Massachusetts.  The officers showed plaintiff a stack of records documenting multiple gun purchases in New Hampshire.  Plaintiff denied having guns in Massachusetts and said that he had nothing further to say, and that he wanted to speak with his lawyer.  Plaintiff alleges that the officers continued to question him, would not let him leave, and eventually served him with the 209A Order.

After the questioning at the DPD occurred, the officers searched Ayotte's residence.  Plaintiff alleges that TPD Officer Woods spearheaded the search, and Borque was also present. Plaintiff alleges that Woods at that time was involved in an undisclosed intimate relationship with Ms. Chalifoux. Plaintiff, who was at Ayotte's residence during the search,

alleges that, using "threat[s] of force," TPD officers induced plaintiff to consent to a search of his car.  No guns were found in Ayotte's home or in plaintiff's car.

Sometime between July 1 and July 15, 2013, plaintiff contacted the Manchester, New Hampshire, Police Department ("MPD") to turn over his New Hampshire firearms license and weapons he had in storage in Manchester.  In the meantime, on July 2, 2013, having received information from Ms. Chalifoux that plaintiff had recently purchased more than forty guns, TPD Officer Wagner filed a criminal complaint in the Lowell District Court, charging plaintiff with violating the 209A Order by failing to turn in his guns.  The Lowell District Court dismissed that complaint in November 2013, after plaintiff had surrendered weapons and his firearms license to the MPD.

## CLAIMS

Plaintiff's 100-page, 348-paragraph Third Amended Complaint asserts the following claims for money damages and for injunctive relief:

1.   Four "undercover" officers, including TPD Officers Woods and Borque, unreasonably searched and seized plaintiff, in violation of his Fourth Amendment rights, on July 1, 2013, in that:

(a) when plaintiff arrived by car at Ms. Chalifoux's residence before service of the 209A order, the

officers approached him and told him to keep his hands
visible;

(b) the officers told plaintiff he had to drive with
them to the DPD for questioning, and positioned their
cars in front of and behind plaintiff's car as they
drove to the DPD, restricting his ability to decline
to go with them; and

(c) the officers frisked plaintiff without his consent
when plaintiff stopped his car en route to the DPD.

2.   Police officers, including TPD Officers Woods and
Borque, violated plaintiff's Fourth and Fifth Amendment
rights at the DPD, in that, before serving him with the
209A order:

(a) the officers questioned plaintiff for an extended
period of time at the DPD, would not let him leave,
and stood in the doorway to the interrogation room,
leading plaintiff to believe he could not leave, when
the officers lacked probable cause to arrest him, in
violation of plaintiff's Fourth Amendment rights; and

(b) the officers did not issue a Miranda warning to
plaintiff, and continued to question him when
plaintiff said he would not respond further without
speaking to a lawyer, in violation of plaintiff's
rights under the Fifth Amendment.

3.   TPD officers, including Borque and Woods, violated
plaintiff's Fourth Amendment rights by:

(a) searching plaintiff's girlfriend Ayotte's
residence without valid consent or probable cause; and

(b) searching plaintiff's car, without valid consent
or probable cause.

4.   TPD Officer Wagner violated plaintiff's Fourth and
Fourteenth Amendment rights by threatening to arrest
plaintiff "on sight."

5.   Plaintiff's voluntary surrender of guns and a gun
permit to the MPD, on or after July 2, 2013, violated

plaintiff's Second Amendment rights.

6.    TPD Officer Wagner violated plaintiff's Fourth and Fourteenth Amendment rights by seeking to charge plaintiff with violating the 209A Order in Lowell District Court, where Wagner's criminal complaint included false assertions of fact.

7.    Defendants violated plaintiff's Fourteenth Amendment rights to substantive due process and equal protection by:

    (a) giving preferential treatment to Ms. Chalifoux; and

    (b) failing to disclose and lying about defendant Woods's involvement in an intimate relationship with Ms. Chalifoux before TPD officers obtained consent to search Ayotte's residence.

8.    TPD officers violated plaintiff's Fourteenth Amendment rights by failing to pursue criminal charges against Ms. Chalifoux and a process server, despite having received complaints that those individuals had harassed and/or threatened plaintiff and Ayotte, and that the process server struck plaintiff's leg with "an object."

9.    TPD supervisory officers are liable for the federal constitutional torts perpetrated by subordinate TPD officers.

10.   The Town of Tyngsborough ("Town") is liable for the federal constitutional torts perpetrated by TPD officers: (a) under the doctrine of respondeat superior, (b) by negligently failing to have an adequate policy for complaining about TPD officers, and (c) for having a municipal custom or policy of depriving plaintiff of his rights.

11.   Guardian ad Litem ("GAL") Richard Wolman, appointed by the Family Court, violated plaintiff's Fourteenth Amendment rights by: (a) refusing to investigate matters as directed by the Family Court; (b) refusing to comply with subpoenas; (c) making false claims in the Family Court proceedings; (d) fabricating evidence against plaintiff; (e) charging excessive fees; and (f) failing to comply with

7

Massachusetts GAL investigation standards.

12.  Defendants engaged in joint action to deprive plaintiff of his civil rights, rendering them liable under 42 U.S.C. §§ 1983 and 1985.

13.  All defendants are liable to plaintiff for predicate acts of racketeering, including perjury, mail fraud, and wire fraud, undertaken for the purpose of depriving plaintiff of his civil rights, rendering defendants liable under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO").

14.  Defendants are liable under Massachusetts law for conduct alleged in the Third Amended Complaint, including the following:

    (a) Woods, Borque, and the Town are liable to plaintiff for abuse of process, relating to the July 1 detention and questioning of plaintiff;

    (b) Woods, Borque, and the Town are liable to plaintiff for false arrest/false imprisonment, relating to the July 1 detention and questioning; and

    (c) Woods and Borque are liable to plaintiff under the Massachusetts Civil Rights Act ("MCRA"), MGL ch. 12, § 11H, relating to the July 1 detention and questioning of plaintiff.


**DISCUSSION**

**I.**   **Federal Claims**

    A.   July 1 Stop and Pat-Frisk (Claim 1)

Plaintiff alleges that defendant officers violated his

Fourth Amendment rights, and de facto arrested him, when they

stopped, frisked, and detained him on July 1 prior to serving

him with the 209A Order.  If a police officer has a reasonable

and articulable suspicion that a person may be involved in
criminal activity, the officer may briefly stop the person to
investigate further.  See Hiibel v. Sixth Jud. Dist. Ct., 542
U.S. 177, 185 (2004).  Such a stop must be "'justified at its
inception, and . . . reasonably related in scope to the
circumstances which justified the interference in the first
place'" to be considered constitutionally reasonable.  Id. at
188 (quoting Terry v. Ohio, 392 U.S. 1, 20 (1968), additional
citations omitted).

State law requires police officers to serve 209A orders.
See MGL ch. 209A, § 7.  When the TPD officers approached
plaintiff on July 1, 2013, in Ms. Chalifoux's driveway, they
were aware that the Lowell District Court had issued the 209A
Order, which had been based on a judicial finding that Ms.
Chalifoux demonstrated "a substantial likelihood of immediate
danger of abuse."  MGL ch. 209A, § 4.  Based on that, and the
information in the officers' possession at the time plaintiff
stopped his car en route to the DPD, including Ms. Chalifoux's
statements that he was volatile and had recently purchased guns,
the officers had a reasonable suspicion that plaintiff could be
armed and could present a risk to the officers, Ms. Chalifoux,
or others, sufficient to justify a Terry stop in Ms. Chalifoux's

driveway.  The officers were, for the same reasons, also justified in conducting the pat-frisk of the plaintiff when he stopped his car and confronted the officers en route to the DPD. Therefore, Claims 1(a) and 1(c) numbered above, should be dismissed for failure to state a plausible claim for relief under the Fourth Amendment.

In Claim 1(b), plaintiff asserts that the officers violated his Fourth Amendment rights by executing a de facto arrest of plaintiff, without probable cause, by compelling him to drive to the DPD for further questioning.  The relevant facts alleged in the complaint are sufficient to allow this claim to proceed against defendants Borque and Woods.  Accordingly, the Court has directed service of Claim 1(b) in a separate Order issued this date (the "Service Order").

B.    Questioning at DPD (Claim 2)

In Claim 2, plaintiff asserts that his Fourth and Fifth Amendment rights were violated when defendant officers questioned him at the DPD.  In Claim 2(a), above, plaintiff has alleged that officers unreasonably seized his person, without probable cause, by questioning him at the DPD for an extended period under circumstances that gave the impression that plaintiff was not free to leave the DPD.  The facts alleged in

the complaint are sufficient to allow Claim 2(a) to proceed.
Accordingly, the Court has directed service of Claim 2(a) in the
Service Order.

Claim 2(b) asserts Fifth Amendment violations relating to
the officers' failure to issue the plaintiff warnings before
questioning him, pursuant to Miranda v. Arizona, 396 U.S. 868
(1969), and to stop questioning plaintiff when he asked to speak
to his attorney.  "Fifth Amendment protections are generally
limited to criminal proceedings," and a plaintiff "may not base
a § 1983 claim for a violation of constitutional rights on the
mere fact that the police questioned him in custody without
providing Miranda warnings when there is no claim that
[plaintiff's] answers were used against him at trial."  Brown v.
SEPTA, 539 F. App'x 25, 27 (3d Cir. 2013) (citation omitted).
Accordingly, Claim 2(b) should be dismissed for failure to state
a plausible § 1983 claim relating to plaintiff's Miranda rights.

C.   July 1, 2013, Searches (Claim 3)

Plaintiff alleges in Claims 3(a) and 3(b) that TPD Officers
Woods and Borque, on July 1, 2013, illegally searched Ayotte's
residence and plaintiff's car, with neither probable cause nor
valid consent.  "[T]he Fourth Amendment test for a valid consent
to search is that the consent be voluntary, and [v]oluntariness

11

is a question of fact to be determined from all the
circumstances." <u>Lopera v. Town of Coventry</u>, 640 F.3d 388, 399
(1st Cir. 2011) (citation and internal quotation marks omitted).

Assuming, without deciding, that plaintiff may assert a
Fourth Amendment claim relating to the search of Ayotte's home,
the allegations in the complaint fail to state a plausible
Fourth Amendment claim. Ayotte consented to the search of her
home upon assurance that her mother would be present and could
revoke consent at any time. The facts alleged by plaintiff do
not plausibly show that Ayotte's consent was involuntary under
all of the circumstances. Accordingly, Claim 3(a) should be
dismissed.

Plaintiff further alleges that the officers, using an
unspecified "threat of force," obtained plaintiff's consent to
search his car. Plaintiff's allegation of unspecified threats,
without more, does not demonstrate that his consent was
involuntary. Accordingly, Claim 3(b) should be dismissed.

D.    <u>Threatened Arrest (Claim 4)</u>

Plaintiff has alleged that TPD Officer Wagner violated his
Fourth and Fourteenth Amendment rights by threatening to arrest
plaintiff "on sight." Plaintiff has failed to allege any facts
suggesting that any actionable search or seizure occurred in

connection with that threat.  See California v. Hodari D., 499 U.S. 621, 626 (1991) (show of authority by police does not constitute seizure unless subject yields or submits to it). Furthermore, the threat, under the circumstances, is not the type of police conduct that may be actionable as a violation of the Fourteenth Amendment right to substantive due process.  See generally Freeman v. Town of Hudson, 714 F.3d 29, 40-41 (1st Cir. 2013); Lockhart-Bembery v. Sauro, 498 F.3d 69, 78 (1st Cir. 2007) (citing cases to illustrate test for behavior that violates right to substantive due process).  Accordingly, plaintiff has not stated a plausible claim relating to Wagner's threat, and Claim 4 should be dismissed.

    E.   Second Amendment (Claim 5)

    Plaintiff's Second Amendment claim is based on his allegation that "of his own volition," to avoid an appearance in the divorce case that he presented "any sort of danger," plaintiff advised the MPD that he had firearms that he wanted to surrender to the MPD.  Plaintiff's averments about voluntarily relinquishing his firearms and gun permit to the MPD belie his claim that any defendant deprived him of the right to bear arms.[3]

---

[3]A 209A order is enforceable in New Hampshire.  See 18 U.S.C. § 2265; N.H. Rev. Stat. Ann. ("RSA") § 173-B:13. Plaintiff has not challenged the validity of those laws; nor has

Accordingly, Claim 5 should be dismissed.

    F.    <u>Criminal Complaint (Claim 6)</u>

    Plaintiff asserts a malicious prosecution claim under 42 U.S.C. § 1983, relating to TPD Officer Wagner's attempt to initiate a criminal proceeding in Lowell District Court by charging plaintiff with violating the 209A Order.  "[A] plaintiff may bring a suit under § 1983 . . . [for a Fourth Amendment malicious prosecution claim] if he can establish that: 'the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor.'" <u>Hernandez-Cuevas v. Taylor</u>, 723 F.3d 91, 101 (1st Cir. 2013) (citation omitted).  Plaintiff alleges that the criminal complaint itself was never technically filed; rather, that Wagner sought leave of court to file charges, and that the court declined to authorize the filing of charges.  Plaintiff has not alleged any facts suggesting that he was seized in any manner by Wagner's criminal complaint.  <u>See</u> <u>Nieves v. McSweeney</u>, 241 F.3d 46, 55 (1st Cir. 2001).  Because no seizure is alleged, Claim 6 should be dismissed.

    G.    <u>Equal Protection/Due Process (Claim 7)</u>

---

he alleged that any defendant sought to enforce such authorities against him when he chose to surrender his weapons.

Plaintiff cries foul with respect to TPD officers' alleged preferential treatment of Ms. Chalifoux, alleging that such treatment violated his rights to equal protection and substantive due process.  To state such an equal protection claim, plaintiff must allege facts to show that he was treated differently than others similarly-situated, and that the reason for any different treatment was discrimination on the basis of some improper classification.  See LeBaron v. Spencer, 527 F. App'x 25, 32 (1st Cir. 2013).  Plaintiff has failed to allege any facts sufficient to make that showing.

Further, nothing alleged by plaintiff, relating to the conduct of TPD Officer Woods or any other state actor, even accepted as true, is sufficiently egregious to state a plausible claim for relief for a violation of plaintiff's rights under the Fourteenth Amendment.  See Freeman v. Town of Hudson, 714 F.3d 29, 40 (1st Cir. 2013).  Accordingly, plaintiff's equal protection and substantive due process claims (Claim 7) should be dismissed.

H.    Failure to Prosecute (Claim 8)

Plaintiff alleges a violation of his civil rights in the TPD officers' failure to prosecute individuals he alleges harassed, threatened, and/or assaulted him.  Plaintiff has no "judicially cognizable interest in the prosecution or nonprosecution of another." Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973).  Accordingly, Claim 8 should be dismissed.

I.    Supervisory/Municipal Liability (Claims 9 & 10)

Plaintiff seeks damages from TPD supervisory officers and the Town of Tyngsborough for violations of his federal rights. Those defendants cannot be held liable under a theory of respondeat superior.  See Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011); Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009).

A plaintiff asserting a claim that a supervisor is liable must show that the "supervisor's conduct (whether action or inaction) constitute[d] 'supervisory encouragement, condonation or acquiescence[,] or gross negligence of the supervisor amounting to deliberate indifference.'" Grajales v. P.R. Ports Auth., 682 F.3d 40, 47 (1st Cir. 2012).  Similarly, a "plaintiff who brings a section 1983 action against a municipality . . . must identify a municipal policy or custom that caused the plaintiff's injury." Haley v. City of Boston, 657 F.3d 39, 51

(1st Cir. 2011) (citations and internal quotation marks
omitted).  Stripped of legal conclusions, the complaint fails to
state any plausible § 1983 claim of municipal or supervisory
liability.  Accordingly, Claims 9 and 10 should be dismissed.

  J. <u>Guardian ad Litem (Claim 11)</u>

  Defendant Wolman was a court-appointed GAL in the Family
Court proceedings involving plaintiff and Ms. Chalifoux.  Wolman
is entitled to absolute immunity with respect to the performance
of "delegated functions . . . intimately . . . related to the
judicial process."  <u>Cok v. Cosentino</u>, 876 F.2d 1, 3 (1st Cir.
1989); <u>see also</u> <u>Sarkisian v. Benjamin</u>, 62 Mass. App. Ct. 741,
745, 820 N.E.2d 263, 266 (2005) (where all claims arise out of
duties performed by GAL acting in quasi-judicial capacity, GAL
entitled to absolute immunity from such claims).  Wolman's
allegedly wrongful conduct cited in the complaint all relates to
Wolman's delegated functions as a GAL.  Accordingly, all claims
asserted against Wolman (Claim 11) should be dismissed, and
Wolman should be dropped from this action.

  K. <u>Joint Action and Private Parties (Claim 12)</u>

  Plaintiff alleges that defendants are liable, under 42
U.S.C. §§ 1983 and 1985, for conspiring to deprive him of his
civil rights.  A section 1985 claim "requires 'some racial, or

perhaps otherwise class-based, invidiously discriminatory animus
behind the conspirators' action.'"  Soto-Padró v. Pub. Bldgs.
Auth., 675 F.3d 1, 4 (1st Cir. 2012) (citations omitted).
Plaintiff has not alleged that he is a member of any protected
class of individuals, and he does not allege any facts
suggesting either a racial motivation or other class-based
discriminatory intent with respect to any alleged wrong-doing.
Accordingly, plaintiff's section 1985 claim should be dismissed
for failure to state a plausible claim for relief.

Section 1983 allows for claims asserting civil rights
conspiracies, but does not provide a free-standing cause of
action for conspiracy claims.  "'Without an actual deprivation
[of a civil right], there can be no liability under Section
1983.'"  Banks v. Gallagher, 686 F. Supp. 2d 499, 528 (M.D. Pa.
2009) (citation omitted).  With the exception of Claims 1(b) and
2(a), plaintiff has not alleged facts sufficient to state any
claim for relief under 42 U.S.C. § 1983 that survives
preliminary review.  Moreover, when stripped of legal
conclusions, the complaint fails to state any plausible
conspiracy relating to the detention and questioning claims
alleged in Claims 1(b) and 2(a).

Plaintiff also seeks to hold private parties liable under

section 1983, asserting that his ex-wife Charlene Shute, his father-in-law James Cieslik, Ms. Chalifoux, her divorce lawyers, a private investigator/friend of Ms. Chalifoux, and other unnamed, unnumbered John and Jane Does, all engaged in joint action with TPD officers and other state agents to deprive him of his civil rights.  A private party can be deemed liable under 42 U.S.C. § 1983 only under limited circumstances, not applicable here.  See generally Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 5 (1st Cir. 2005) (private party may be liable under section 1983 if "the totality of the circumstances reveals that the state has 'so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity]'" (citation omitted)).  Stripped of legal conclusions, the claims asserting such joint action fail to state a plausible claim for relief.  Accordingly, plaintiff's § 1983 claims (Claim 12) asserted against the following defendants, should be dismissed: Cieslik; Ms. Chalifoux; Attorneys Bakis, James, Mauritz-James, Halks, and Mauritz; Mustapha; Shute; and the Does.

    L.   <u>RICO (Claim 13)</u>

"The statutory provision that creates a RICO civil action,

18 U.S.C. § 1964(c), allows '[a]ny person injured in his business or property by reason of a violation of' the RICO statute to bring a civil suit for treble damages. . . . In other words, RICO standing requires compensable injury and proximate cause." Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1055 (9th Cir. 2008) (citations omitted); see also Zareas v. Bared-San Martin, 209 F. App'x 1, 2 (1st Cir. 2006); Doe v. Roe, 958 F.2d 763, 767 (7th Cir. 1992) ("a civil RICO action cannot be premised solely upon personal or emotional injuries").

Plaintiff alleges generally that he has been deprived of his civil rights and has suffered damages due to RICO violations.  Such allegations do not show any injury to plaintiff's business or property.  See Zareas, 209 F. App'x at 2.  Furthermore, when stripped of legal conclusions, the Third Amended Complaint fails to show the existence of any RICO enterprise.  Accordingly, Claim 13 should be dismissed for failure to state a claim upon which relief can be granted.

## II.  **State Law Claims (Claim 14)**

Plaintiff cites 28 U.S.C. § 1332 as grounds for this Court's subject matter jurisdiction in this case.  Section 1332 requires complete diversity of the parties.  See Alvarez-Torres v. Ryder Mem'l Hosp., Inc., 582 F.3d 47, 53-54 (1st Cir. 2009).

Plaintiff has alleged that he and several defendants live in New Hampshire, which precludes a finding of complete diversity.  See id.  Therefore, section 1332 does not provide an independent basis for subject matter jurisdiction over plaintiff's state law claims.

This Court may exercise supplemental jurisdiction over plaintiff's claims because those claims arise out of same nucleus of operative facts as his federal claims.  See 28 U.S.C. § 1367(a).  In the Order issued separately on this date, the Court has directed service of state law abuse of process and false arrest/false imprisonment claims against defendants Borque, Woods, and their municipal employer, and an MCRA claim against Borque and Woods, arising out of the officers' conduct in detaining and questioning plaintiff.  Those claims are numbered herein as Claims 14(a) – 14(c).  Plaintiff's MCRA claim against the Town of Tyngsborough should be dismissed for the same reason that the District Judge should dismiss the claim of municipal liability under section 1983.  See Chaabouni v. City of Boston, 133 F. Supp. 2d 93, 103 (D. Mass. 2001) (no vicarious liability under MCRA for municipal employers).

Pursuant to 28 U.S.C. § 1367(c)(2), the District Judge should decline to exercise jurisdiction over all of the

remaining state law claims in the Third Amended Complaint, without prejudice to plaintiff's ability to litigate such claims in state court, as those claims would substantially predominate over the limited number of federal questions remaining in this action.  Upon declining to exercise such jurisdiction, the District Judge should also drop all parties from this action other than Borque, Woods, and the Town.

## CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge recommends that Claims 1(a), 1(c), 2(b), and 3 - 13, as numbered in this Report and Recommendation, be dismissed for failure to state a claim upon which relief can be granted.  Defendants Wolman, Jennifer Chalifoux, Shute, Cieslik, Mustapha, Mauritz, Halks, Bakis, James, Mauritz-James, Shay, Howe, Wagner, and the unnamed John and Jane Does, should be dropped from this case. Further, except for Claims 14(a) – 14(c) that this Court has caused to be served, and the MCRA claim of municipal liability that should be dismissed with prejudice, all of the other state law claims asserted in the Third Amended Complaint should be dismissed without prejudice to refiling in state court.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed.

R. Civ. P. 72(b)(2).  Failure to file objections within the
specified time waives the right to appeal the District Court's
order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57
(1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617
F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by
objections to magistrate judge's report are subject to review by
district court; issues not preserved by such objection are
precluded on appeal).


                              Andrea K. Johnstone
                              United States Magistrate Judge

July 14, 2014

cc:  Joseph W. Chalifoux, pro se